UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| WALTER WILLIAM MOORE, )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>MAINE DEPT. OF CORRECTIONS, et al., )<br>)<br>Defendants ) | Civil No. 16-398-NT |

**MOTION FOR SUMMARY JUDGMENT**

Pursuant to F. R. Civ. P. 56(a), defendants Martin Magnusson, Joseph Fitzpatrick, Jeffrey Merrill and Randall Liberty hereby move for summary judgment in the above matter. As grounds for this motion, defendants state that there is no issue of material fact and that they are entitled to judgment as a matter of law. Specifically, defendants state:

1. Plaintiff's claims regarding cessation of hormone treatment in 2005 and 2008 are barred by her failure to exhaust available administrative remedies.

2. Plaintiff's claims for injunctive relief are moot.

3. Plaintiff's claims for compensatory damages are barred by the absence of a physical injury.

4. The complaint does not allege any facts supporting the liability of defendants Joseph Fitzpatrick or Randall Liberty.

## **MEMORANDUM IN SUPPORT OF MOTION**

### **Facts**

Plaintiff Walter Moore[1] is a prisoner incarcerated at the Maine State Prison (MSP). She asserts that she is a transgendered individual, born biologically a male but identifying as a female. Moore alleges that, prior to beginning her sentence in 2005, she was taking hormone medication to treat gender identity disorder. She claims that the prison's medical providers ceased the hormone medication upon her arrival at the prison. She further alleges that, in 2008, she was sent to the Riverview Psychiatric Hospital, where she was prescribed hormones, but that these were discontinued by the prison's medical providers upon her return to MSP. She alleges that Jeffrey Merrill was the warden of MSP and Martin Magnusson was the Commissioner of the Department of Corrections at the time of these events.

Moore claims that the prison's private medical providers have "brushed off" her requests for mental health treatment related to her gender identity disorder. She states that, although she has been seen by a number of doctors, none has any background in dealing with gender identity disorder. Moore claims that the defendants' treatment of her constitutes cruel and unusual punishment in violation of the Eight Amendment.

For relief, Moore seeks financial compensation for damages "both mental and physical," although she does not provide any description of any physical injury she suffered. In addition, she asks for an injunction "ordering the defendants to provide adequate health care including hiring a GID specialist to assess and present a treatment plan."

In November of 2015, the Department adopted Policy 23.8, "Management of Transgender and Intersex Prisoners and Residents." The policy created protocols for assessment,

---

[1] Moore alleges an alias of Nikki Natasha Petrovickov. Pursuant to Department of Corrections policy, defendants refer to her by the name under which she was convicted and sentenced.

placement, management and treatment of prisoners with gender dysphoria or who are transgender or intersex. It established a multi-disciplinary team, including the chief administrative officer of the facility, security personnel, and medical and mental health providers. The policy deals with issues such as housing and security concerns, strip searches, allowed property and clothing, and medical and mental health treatment.

A multi-disciplinary team was convened initially on December 3, 2015 to provide recommendations regarding Moore. The team discussed such topics as Moore's assigned housing, her requests for cosmetics and female clothing, appropriate forms of address, and medical diagnosis. Similar meetings have been held on January 22, February 12, May 10, and June 30, 2016; February 2, June 15, and September 19, 2017; and January 11 and March 22, 2018.

At the initial meeting, the prison's medical director, Dr. Robert Clinton, indicated that hormones had not been prescribed for Moore as she did not have an underlying medical condition that required medical treatment. At a subsequent meeting, Dr. Daniel Bannish, a psychologist, stated that he had received records indicating that Moore had received hormone treatment in Massachusetts before entering the prison. Dr. Sarah Miller, also a psychologist, indicated that Moore did not meet the criteria for gender dysphoria, but that she would reassess as she received more information. At a meeting on September 19, 2017, the doctors advised that Moore had been diagnosed with gender dysphoria and that hormone treatment would be started. At the next meeting, on January 11, 2018, it was reported that Moore was receiving hormones, although Moore claimed she was not receiving the correct type or dosage of the medication.

3

As a general rule, Warden Liberty and the other prison staff defer to the judgment of the Department's contracted medical providers regarding the necessity of medical treatment and the type of treatment prescribed.

In 2005 and 2008, the Department of Corrections had in place a grievance procedure governing complaints about medical and mental health care. The policy allowed for an initial attempt at an informal resolution of the complaint with medical or mental health staff, filing of a formal grievance with the facility's Grievance Review Officer, an appeal to the Chief Administrative Officer and, ultimately, an appeal to the Commissioner of the Department of Corrections. A search of records of third-level grievances filed with the Commissioner's office shows that Moore did not file a third-level appeal of either the 2005 or the 2008 instances where she was allegedly taken off hormone medication.

## Argument

**1. Plaintiff's claims regarding cessation of hormone treatment in 2005 and 2008 are barred by her failure to exhaust available administrative remedies.**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(1)(a) states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

The exhaustion requirement applies to all claims arising from conditions of confinement. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The PLRA requires proper exhaustion, meaning that the prisoner must use all steps in the process created by the agency. *Woodford v. Ngo*, 548 U.S. 1, 126 S. Ct. at 2385 (2006). A finding that plaintiff failed to exhaust administrative remedies is dispositive of other claims in the case. *Id.* at 16. The issue of exhaustion should be decided prior

to a hearing on the merits of the case, and a motion for summary judgment is an appropriate vehicle with which to do so. *Albino v. Baca*, 747 F. 3d 1162, 1170 (9th Cir. 2014).

In this case, plaintiff alleges two specific instances in which prison medical providers discontinued her hormone medication. The prison's medical grievance policy existing at the time provided a vehicle for having those decisions reviewed, first by authorities within the prison and, ultimately, by the Commissioner. The record establishes that plaintiff did not avail herself of all three levels of appeal that were available to her. Since plaintiff failed to exhaust all avenues of appeal under the grievance procedure, her claims regarding the two instances of medication discontinuance must be dismissed.

**2. Plaintiff's claims for injunctive relief are moot.**

A case becomes moot when the issues are no longer "live" or the parties lack a cognizable legal interest in the outcome, or when the court is no longer able to give any effective relief to the prevailing party. *American Civil Liberties Union of Massachusetts v. U.S. Conference of Catholic Bishops*, 705 F. 3d 44, 52 (1st Cir. 2013). An actual controversy must be present at all stages of the proceeding, not only at the time the complaint is filed. *Steffel v. Thompson*, 415 U.S. 452, 460, note 10 (1974). The issue of mootness should ordinarily be decided in advance of a determination on the merits. *American Civil Liberties Union, supra.*

Non-medical prison officials are entitled to defer to the professional judgment of the prison's medical providers on questions of prisoners' medical care. *Spencer v. Bender*, 2010 WL 972207 (D. Mass. 2010), *citing Hayes v. Snyder*, 546 F. 3d 516, 527 (7th Cir., 2008). As the court stated in *Spruill v. Gillis*, 372 F. 3d 218, 236 (3d Cir. 2004):

> If a prisoner is under the care of medical experts…a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This

> follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians and so on. Holding a non-medical prison official liable in a case where a prisoner is under a physician's care would strain this division of labor.

*C.f., Glen v. Barua*, 252 Fed. Appx. 493, 499 (3d Cir. 2007) (absent a reason to believe that prison doctors or their assistants are mistreating or not treating a prisoner, a non-medical prison official will not be chargeable with "deliberate indifference.")

In her request for injunctive relief, Moore asks the court to order assessment and treatment of her claimed gender identity disorder. Even before the inception of this suit, the Department of Corrections had adopted a policy governing the assessment and treatment of transgender prisoners and had held several multidisciplinary team meetings regarding Moore. The notes of these meetings reveal that the prison authorities and their medical providers made a number of accommodations to Moore's gender identity in terms of allowed property, security procedures, ongoing counselling and other aspects of prison life. The medical assessment of plaintiff eventually resulted in her being provided hormone therapy around the end of 2017.

Given the Department's adoption of a system-wide policy for identifying, accommodating and treating transgender individuals and its application of that policy to the treatment of the plaintiff, it cannot be concluded that defendants are deliberately indifferent to Moore's serious medical needs.[2]

---

[2] Moore disagrees with certain aspects of the medical care being provided to her; however, this disagreement does not create an issue of constitutional dimension. *See, Kosilek v. Spencer,* 774 F. 3d 63, 83 (1st Cir. 2014) ("The courts have consistently refused to create constitutional claims out of disagreements between prisoners and doctors about the proper course of a prisoner's medical treatment or to conclude that simple medical malpractice rises to the level of cruel and unusual punishment.")

**3. Plaintiff's claims for compensatory damages are barred by the absence of a physical injury.**

The Prison Litigation Reform Act states: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). In *Siglar v. Hightower*, 112 F. 3d 191, 193 (5th Cir. 1997), the Court of Appeals interpreted §1997e(e) as requiring an injury that is more than *de minimis*, although the injury need not be significant. In that case, it was alleged that a guard twisted plaintiff inmate's arm behind his back and twisted his ear, causing the ear to be bruised for three days. The court held that this injury was *de minimis*, and that the inmate's claim for emotional distress damages was barred by the PLRA.

Aside from a single reference to damages "both mental and physical," Moore does not elaborate in her complaint any physical injury she has suffered as a result of defendants' alleged actions. Absent evidence that she sustained more than a *de minimis* physical injury from the discontinuance of hormone treatments or defendants' failure to assess and treat her alleged gender identity disorder, plaintiff may not claim compensatory damages for emotional distress.

**4. The complaint does not allege any facts supporting the liability of defendants Joseph Fitzpatrick or Randall Liberty.**

It is "undisputed" that liability under 42 U.S.C. § 1983 cannot be established solely on a theory of *respondeat superior*. *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009). "Absent vicarious liability, each Government official his or her title notwithstanding, is only liable for his or her own misconduct." *Id.*

In her complaint, Moore alleges that she filed many grievances about her hormones being discontinued but that she was "shut down" by defendant Merrill. She also alleges that defendant Magnusson was the commissioner at the time of those events. Although Moore has named the current warden and commissioner as defendants, there is a complete absence in her complaint of any allegations regarding the actions of these two defendants and how they resulted in any violation of plaintiff's constitutional rights. Summary judgment should be granted to defendants Fitzpatrick and Liberty on this basis.

## Conclusion

For the reasons stated above, the court should grant summary judgment to the defendants Martin Magnusson, Jeffrey Merrill, Joseph Fitzpatrick and Randall Liberty.

August 3, 2018
/s/ James E. Fortin
James E. Fortin
Assistant Attorney General
*James.Fortin@maine.gov*

Office of Attorney General
Six State House Station
Augusta, ME 04333-0006
Tel. (207) 626-8800

**NOTICE**

Plaintiff's attention is directed to Local Rule 56(c), which requires that a party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts in conformance with the requirements of Local Rule 56(c). Facts contained in the moving party's statement of material facts may be deemed admitted unless properly controverted.

CERTIFICATE OF SERVICE

      I hereby certify that, on this date, I electronically filed this document with the court using the ECF system, which will send notice of filing to Robert S. Hatch, Esq. and Elizabeth K. Peck, Esq. and that I caused one copy of this filing to be served upon Walter William Moore, Maine State Prison, 807 Cushing Road, Warren, ME 04864 by having the same deposited in the United States Mail, postage prepaid.

August 3, 2018                                        /s/ James E. Fortin
                                                              James E. Fortin
                                                              Assistant Attorney General