UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

WALTER WILLIAM MOORE, a/ka )
Nikki Natasha Petrovickov, )
)
Plaintiff )
)
v. )          1:16-cv-00398-NT
)
MAINE DEPARTMENT OF )
CORRECTIONS, et al., )
)
Defendants )

## RECOMMENDED DECISION ON DEFENDANTS'
## MOTIONS FOR SUMMARY JUDGMENT

Defendants Correct Care Solutions, LLC, Robert Clinton, M.D., and Correctional

Medical Services, Inc., have moved for summary judgment in this action in which Plaintiff,

an inmate at the Maine State Prison, alleges Defendants did not provide adequate treatment

for gender dysphoria. (Motions, ECF Nos. 170, 173.)

Following a review of the summary judgment record and after consideration of the

parties' arguments, I recommend the Court grant Defendants' motions for summary

judgment.

### SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a). "After the moving party has presented evidence in support

of its motion for summary judgment, 'the burden shifts to the nonmoving party, with

respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact

reasonably could find in his favor.'" *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st

Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir. 1998)).

A court reviews the factual record in the light most favorable to the non-moving

party, resolving evidentiary conflicts and drawing reasonable inferences in the non-

movant's favor. *Perry v. Roy*, 782 F.3d 73, 77 (1st Cir. 2015). If a court's review of the

record reveals evidence sufficient to support findings in favor of the non-moving party on

one or more of the plaintiff's claims, a trial-worthy controversy exists, and summary

judgment must be denied as to any supported claim. *Id.* ("The district court's role is limited

to assessing whether there exists evidence such that a reasonable jury could return a verdict

for the nonmoving party." (internal quotation marks omitted)). Unsupported claims are

properly dismissed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

### SUMMARY JUDGMENT RECORD

When presented with a summary judgment motion, a court ordinarily considers only

the facts included in the parties' statements of material facts, which statements must be

supported by citations to evidence of record. Federal Rule of Civil Procedure 56(c) and

District of Maine Local Rule 56(b)-(d) require the specific citation to record evidence. In

addition, Local Rule 56 establishes the manner by which parties must present their factual

statements and the evidence on which the statements depend. A party's pro se status does

not relieve the party of the obligation to comply with the court's procedural rules.[1] *Ruiz*

---

[1] "[T]he Court is required to maintain a strict neutrality between opposing parties and even though a more
forgiving reading may be appropriate for a pro se party in the summary judgment context, it is also true that
'[j]udges and magistrate judges who review these filings must be able to rely on procedural rules so as to
avoid becoming the lawyer for the unrepresented [party] or devoting an excessive portion of their time to

*Rivera v. Riley*, 209 F.3d 24, 27-28 & n. 2 (1st Cir. 2000); *Marcello v. Maine*, 489 F. Supp. 2d 70, 77 (D. Me. 2007).

By rule, a party seeking summary judgment must file, in addition to its summary judgment motion, a supporting statement of material facts setting forth each fact in a separately numbered paragraph, with each factual statement followed by a citation to evidence of record that supports the factual statement. D. Me. Loc. R. 56(b). A party opposing a motion for summary judgment must file an opposing statement in which it admits, denies, or qualifies the moving party's statements by reference to each numbered paragraph, with citations to supporting evidence, and in which it may set forth additional facts, in separately numbered paragraphs, with citation to supporting evidence. D. Me. Loc. R. 56(c). Here, Plaintiff did not file a response to either Defendants' motions or to their supporting factual statements.

"Facts contained in a supporting … statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." D. Me. Loc. R. 56(f). Additionally, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment." *Id.* Finally, "[t]he court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts." *Id.*

---

such cases.'" *United States v. Baxter*, 841 F. Supp. 2d 378, 383 (D. Me. 2012) (quoting *Clarke v. Blais*, 473 F. Supp. 2d 124, 129 (D. Me. 2007)).

**FACTUAL AND PROCEDURAL BACKGROUND**[2]

Plaintiff is a transgender individual incarcerated at the Maine State Prison. (DSMF ¶ 1.) Plaintiff asserts she has been denied adequate care for gender dysphoria. (DSMF ¶ 2.) Plaintiff contends that upon her intake to the prison in 2005, she was receiving hormone treatment, but the treatment was terminated. (DSMF ¶ 3; Complaint at 3.) The prison's medical personnel did not provide Plaintiff with hormone medication at the prison. (DSMF ¶ 2; Complaint at 3.) In November 2008, Plaintiff was sent to the Riverview Psychiatric Hospital, where Plaintiff was placed on hormones, but the prison's medical providers discontinued the hormones upon Plaintiff's return to the prison. (DSMF ¶ 4; Complaint at 3.) Defendant Correctional Medical Services, Inc. ("CMS") was the health care provider to the prison during relevant times in 2005 and 2008. (CMS SMF ¶ 5; Complaint at 4.)[3]

In 2005 and 2008, the Maine Department of Corrections (MDOC) had a prisoner grievance policy that governed complaints about medical and mental health care. (DSMF ¶ 6.) The policy involved a multi-step process. As the first step, the policy required the inmate to attempt to resolve the complaint informally with medical or mental health staff, followed by the filing of a formal grievance with the facility's Grievance Review Officer, an appeal to the Chief Administrative Officer of the facility, and then an appeal to the Commissioner of the MDOC. (DSMF ¶ 7.)

---

[2] References to the statement of material facts filed by Defendants Correct Care Solutions, LLC and Robert Clinton (ECF No. 171), will be cited as "DSFM ¶ __." References to Defendant Correctional Medical Services, Inc.'s statement of material facts (ECF No. 174) will be cited as "CMS SMF ¶ __."

[3] Defendant Todd Tritch, who was the district manager for CMS, was previously dismissed from the case. (CMS SMF ¶¶ 5-6; ECF No. 169.)

Plaintiff "placed a number of requests and [grievances], [and] all [grievances] were appealed to the State Commissioner level." (Complaint at 2.) Plaintiff, however, did not file a third-level grievance in 2005. (DSMF ¶ 8.) Plaintiff also did not file a third-level grievance in the six-month period beginning November 1, 2008. (DSMF ¶ 9.)

Defendant Correct Care Solutions, LLC ("CCS") began providing health care services to the MDOC in July 2012.[4] (DSMF ¶ 10.) In November 2014, Dr. Sarah Miller, a board-certified forensic psychologist, assessed Plaintiff. (DSFM ¶ 21-22.) As the time, given Plaintiff's complex clinical presentation, Dr. Miller concluded that the available data did not support full criteria for a diagnosis of gender dysphoria. (DSFM ¶¶ 23-24.) Based on Dr. Miller's 2014 assessment, CCS's clinical team determined that hormone treatment for Plaintiff was not clinically indicated. (DSFM ¶ 25.)

A multi-disciplinary team of mental health, psychiatric and medical providers as well as members of MDOC met on May 14, 2015, to discuss the results of Dr. Miller's evaluation and how to approach Plaintiff with other treatment options. (DSFM ¶ 29.) That same day, members of the multi-disciplinary team met with Plaintiff to discuss Dr. Miller's assessment and to discuss other treatment options for Plaintiff, including individual therapy and psychiatric medication. (DSFM ¶¶ 31-32.) Plaintiff apparently did not file a grievance regarding this course of treatment.

---

[4] Defendant Robert Clinton, M.D. has been Regional Medical Director for CCS since August 1, 2012, and references to "CCS" in this Recommended Decision refer collectively to Dr. Clinton as well as to Correct Care Solutions, LLC. (*See* Declaration of Robert Clinton, M.D., ECF No. 171-1, ¶¶ 1-2.)

In November 2015, the MDOC adopted Policy 23.8, "Management of Transgender and Intersex Prisoners and Residents." (DSMF ¶ 42.) The policy establishes protocols for the assessment, placement, management and treatment of prisoners with gender dysphoria or who are transgender or intersex. (*Id.*) The policy establishes a multi-disciplinary team, including the chief administrative officer of the facility, security personnel, and medical and mental health providers. (DSMF ¶ 43.) The policy addresses issues such as housing, security concerns, and medical and mental health treatment. (DSMF ¶ 42.)

Consistent with the policy, CCS medical and mental health staff working in MDOC facilities utilize a collaborative clinical team approach for the care of all transgender and intersex prisoners. (DSMF ¶ 43.) The clinical team meets on a regular basis to discuss patient status, regardless of whether that patient has been diagnosed with gender dysphoria, and to discuss recommendations for treatment, including non-medical/mental health accommodations for transgender patients. (*Id.*)

The multi-disciplinary team met regularly to discuss Plaintiff's treatment protocols and requested accommodations, including providing her with certain clothing, hair removal options and personal grooming products, and to discuss security issues such as housing and pat-down protocols. (DSMF ¶ 44.)

In June 2017,[5] the clinical team decided that Plaintiff should be reassessed with respect to the criteria for gender dysmorphia. (DSMF ¶ 51.) On August 22, 2017, Dr.

---

[5] Plaintiff initiated this lawsuit on July 29, 2016, seeking damages and injunctive relief against CMS, CCS, the MDOC, the former Commissioner of the MDOC, and the former and current wardens of the Maine State Prison. (Complaint at 1, ECF No. 1.) Plaintiff amended the complaint on October 13, 2016. (ECF No. 24.)

Miller reassessed Plaintiff. (DSMF ¶ 52.) With Dr. Miller's findings from the reassessment, additional records gathered following the original assessment and clinical insights provided by Daniel Bannish, Psy.D., Plaintiff's therapist, the clinical team concluded that Plaintiff met the criteria for a gender dysmorphia diagnosis and determined that hormone therapy would be appropriate. (DSMF ¶¶ 53-55.)

On September 19, 2017, during a meeting of the multi-disciplinary team, Dr. Miller reported that Plaintiff had been diagnosed with gender dysphoria and that hormone treatment would be started. (DSMF ¶ 56.) Plaintiff began hormone therapy, although Plaintiff was not satisfied with the type or dosage of the medication. (*See* DSMF ¶¶ 63, 67-69.) The record does not reflect that Plaintiff filed a grievance regarding this course of treatment.

## DISCUSSION

### A.     Exhaustion of Administrative Remedies

Plaintiff claims that Defendants improperly denied or discontinued Plaintiff's hormone medication. In addition to a claim for money damages, Plaintiff asks the Court to order Defendants to arrange for an assessment and treatment. (Complaint at 3.) Defendants contend Plaintiff failed to exhaust the available administrative remedies and, therefore, Plaintiff's claims for monetary damages and injunctive relief are barred.

Defendants Martin Magnusson, Joseph Fitzpatrick, Jeffrey Merrill, and Randall Liberty previously moved for summary judgment based on Plaintiff's failure to exhaust the available administrative remedies. (ECF No. 133.) The Court granted that motion. (ECF

Nos. 166, 167.)  The reasoning of the recommended decision on the prior motions is equally applicable to the pending motions and is reiterated below.

Federal law requires a prisoner to exhaust the available administrative remedies before initiating a lawsuit based on 42 U.S.C. § 1983, or any other federal law.  42 U.S.C. § 1997e.  Specifically, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA [Prison Litigation Reform Act] and that unexhausted claims cannot be brought in court.")

The Supreme Court has held that § 1997e(a) requires "proper exhaustion" of a prisoner's administrative remedies.  *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  *Id.* at 90 – 91.  "Compliance with prison grievance procedures … is all that is required … to 'properly exhaust.'"  *Jones*, 549 U.S. at 218.  "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  *Id.*

Exhaustion is required even when the prisoner's suit seeks monetary damages that are not available through the prison's grievance process.  *Booth v. Churner*, 532 U.S. 731, 734-35 (2001).  Exhaustion is also required even when the suit raises constitutional claims, such as claims alleging excessive force by prison officials.  *Woodford*, 548 U.S. at 91 n.2;

*Porter*, 534 U.S. at 520.  However, "[a] prisoner need not exhaust remedies if they are not 'available.'"  *Ross v. Blake*, 136 S. Ct. 1850, 1855 (2016).  Thus, "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'"  *Id.* at 1859 (quoting *Booth*, 532 U.S. at 738).

The record establishes that at all material times, the Maine State Prison had a grievance policy that provides for an initial attempt at informal resolution of a complaint with medical or mental health staff, a first-tier grievance with the facility's Grievance Review Officer, a second-tier appeal to the Chief Administrative Officer of the facility and, ultimately, a third-tier appeal to the Commissioner of the Department of Corrections. (DSMF ¶ 7.)  Plaintiff contends that she "placed a number of requests and [grievances], [and] all [grievances] were appealed to the State Commissioner level."  (Complaint at 2.) There is, however, no record of any third-tier grievance appeals following the denial of hormone treatment to Plaintiff in 2005 or for the six-month period following November 1, 2008.[6] (DSMF ¶ 8-9.)  In addition, Plaintiff's assertion that after the 2005 hormone decision "I [grievanced] immediately and was shut down by Warden Merrill in middle '05" (Complaint at 3), suggests that Plaintiff's grievance did not proceed beyond the second level.  Moreover, with respect to the later treatment provided by CCS, to the extent such treatments could be considered separate from the care provided earlier by CMS, the record lacks any evidence of a grievance initiated by Plaintiff.

---

[6] In the complaint, Plaintiff alleges the hormone treatments were provided at Riverview Hospital in November 2008, but stopped when Plaintiff returned to the prison. (Complaint at 3-4.)

On this record, one cannot reasonably conclude that Plaintiff exhausted the available administrative remedies. To proceed on the claims, therefore, Plaintiff must demonstrate that the administrative remedies were not actually "available." *See Albino v. Baca,* 747 F.3d 1162, 1172 (1st Cir. 2014); *Ross*, 136 S. Ct. at 1862 (asking whether there was "persuasive evidence" of threats, game-playing, or misrepresentations on a system-wide basis or in the individual case). Plaintiff has failed to present any persuasive evidence that would support a finding that the administrative remedies were not available to Plaintiff. The record thus establishes that Plaintiff failed to exhaust the available administrative remedies regarding the claims asserted in this matter.[7] Accordingly, Plaintiff's claims are barred.[8]

## B. Prospective Relief and Mootness

Plaintiff also asks the Court to order an assessment of and treatment for gender dysphoria. (Complaint at 3-4.) Even if Plaintiff's claims are not barred by the failure to

---

[7] While the record suggests that Plaintiff is not satisfied with the current course of treatment, "[t]he courts have consistently refused to create constitutional claims out of disagreements between prisoners and doctors about the proper course of a prisoner's medical treatment" and the Eighth Amendment "does not impose upon prison administrators a duty to provide care that is ideal, or of the prisoner's choosing." *Kosilek v. Spencer*, 774 F.3d 63, 82-83 (1st Cir. 2014) (quoting *Watson v. Caton*, 984 F.2d 537, 540 (1st Cir.1993)). Therefore, to the extent Plaintiff asserts a claim based on a disagreement as to the appropriate course of treatment for gender dysphoria, Plaintiff has presented no evidence that would support a deliberate indifference claim regarding the course of treatment even if Plaintiff had satisfied the exhaustion requirement. *Torraco v. Maloney*, 923 F.2d 231, 234 (1st Cir. 1991) (where a claim involves a dispute that concerns the choice of a course of treatment, "deliberate indifference may be found where the attention received is so clearly inadequate as to amount to a refusal to provide essential care.")

[8] The exhaustion requirement applies "irrespective of the forms of relief . . . ." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001); *see also Cronin v. State*, No. CIV. 00-0129-P-C, 2000 WL 762206, at *1 (D. Me. May 12, 2000) (recommending dismissal of an action seeking only prospective relief for failing to exhaust). Plaintiff's claims for damages and injunctive relief, therefore, are barred.

satisfy the exhaustion requirement of the PLRA, Plaintiff's claim for prospective injunctive relief is moot.

An issue or a case is moot when a court cannot give effective relief to the potentially prevailing party. *See Church of Scientology of California v. United States*, 506 U.S. 9, 12 (1992). A case or issue can be moot at the outset, or a case or issue "not moot at the outset can become moot because of a change in the fact situation underlying the dispute, making relief now pointless." *Horizon Bank & Tr. Co. v. Mass.*, 391 F.3d 48, 53 (1st Cir. 2004).

Because CMS no longer provides medical services to the Maine State Prison, Plaintiff's claim for prospective relief against CMS is moot. *See Gross v. Landry*, 1:17-cv-00297-JAW, 2018 U.S. Dist. LEXIS 80522, *7-8 (D. Me. May 14, 2018). Plaintiff's claim that CCS assess Plaintiff and provide treatments for gender dysphoria also "has become moot" because Plaintiff has been assessed and is now receiving hormone treatments. As the result of policy changes at the prison and the medical determinations following the beginning of the parties' dispute, Plaintiff achieved the result requested, which means "there is no ongoing conduct to enjoin." *See Town of Portsmouth, R.I. v. Lewis*, 813 F.3d 54, 58 (1st Cir. 2016). [9]

Although CCS assessed and treated Plaintiff, Plaintiff arguably could maintain a request for injunctive relief if the "voluntary cessation" exception to the mootness doctrine applied. "This exception can apply when a defendant voluntarily ceases the challenged practice in order to moot the plaintiff's case, and there exists a reasonable expectation that

---

[9] This reasoning was also included as a basis for the recommendation on the prior motions for summary judgment. (*See* ECF No. 166 at 12-13.)

the challenged conduct will be repeated following dismissal of the case." *Id.* at 59 (internal quotations, citations, and modifications omitted). The purpose of this exception is "to avoid a manipulative litigant immunizing itself from suit indefinitely, altering its behavior long enough to secure a dismissal and then reinstating it immediately after." *Am. Civil Liberties Union of Massachusetts v. U.S. Conference of Catholic Bishops*, 705 F.3d 44, 54–55 (1st Cir. 2013). Here, the record lacks any evidence to establish that CCS would cease providing treatments after termination of this case. The "voluntary cessation" exception, therefore, does not apply, and Plaintiff's claim for injunctive relief is moot.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court grant Defendants' motions for summary judgment. (Motions, ECF Nos. 170, 173.)

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison

Dated this 24th day of July, 2019.      U.S. Magistrate Judge